GEORGE W. ARNETT, appellant,

*v.*

ASHBEL WELCH'S EXECUTORS, respondents.

1. The court of chancery may permit an answer to be amended, even after the announcement of the decision of the cause.

2. The rules of equity pleading require that the complainant shall state the facts upon which his claim rests with such fullness and certainty as will give the defendant clear information of the case he is called upon to answer.

On appeal from a decree in *Welch's Executors* v. *Arnett*, advised by Vice-Chancellor Bird, which directed an account to be taken, as stated in the opinion reported below:

*Mr. Kuhl* and *Mr. Hayhurst*, for the appellant.

*Mr. A. D. Anderson* and *Mr. A. G. Richey*, for the respondents.

The opinion of the court was delivered by

DIXON, J.

The bill in this cause was exhibited for the purpose of obtaining an account of transactions under a contract dated September 24th, 1881, between the testator of the complainants and the defendant, by which the latter became the agent of said testator to cut off, manufacture, transport, sell and collect the proceeds of sale of about two hundred acres of woodland in the State of Delaware belonging to said testator.

There are two appeals before us, one by the complainants, from an order permitting an amendment of the answer after the decision of the cause was announced, the other by the defendant, from the order directing an account to be taken.

I think the order permitting the amendment of the answer should be affirmed, for the reasons given by the vice-chancellor.

The order directing an account needs more consideration. It requires the account to be taken in accordance with the conclusions filed by the vice-chancellor, one of which is, that the lumber sawed at the old mill, and used in building the new mill and other structures upon the premises, was not included in the defendant's statements of lumber sawed, for which he was held accountable.

The work of sawing the lumber on the tract was commenced about October 29th, 1881, at an old mill, and from that time until about the middle of February, 1882, the defendant was engaged in erecting a larger mill and other necessary buildings and making roads upon the premises. During this interval, he weekly rendered to the testator a statement of the lumber sawed,

aggregating about one hundred and ninety thousand feet, of which about forty thousand feet were sawed for customers; but no report was made of the sale or shipment of any lumber, nor did the statements indicate how the lumber sawed, which did not belong to customers, had been disposed of. After the period mentioned, the weekly reports showed not only the amount of lumber sawed, but also the amount shipped.

The defendant insists, that the lumber cut from the tract and sawed, up to the middle of February, 1882, being about one hundred and fifty thousand feet, and some of that afterwards sawed, was consumed in the buildings and roads constructed by him, and the vice-chancellor's conclusion to the contrary is one of the grounds of his appeal.

This conclusion of the learned vice-chancellor was probably warranted by the condition of the pleadings and proofs at the time it was announced, for then the answer contained a substantial admission to that effect; but subsequently the answer was, we think rightly, amended, so as to aver that the lumber thus consumed was included in the defendant's statements of lumber sawed; and upon the issue thus raised, the weight of evidence appears with the defendant.

The amount of lumber reported as sawn in the old mill was nearly up to its full capacity, and unless we assume that this included the lumber used in building the new works, it is impossible to tell whence the lumber so used was obtained. The amount needed for the new works was about as much as was so reported, and its consumption for this purpose affords the only reasonable method of accounting for its disposition. It is evident, also, that the testator must have so understood the matter, for otherwise he would certainly have sought to know why, from so much lumber sawn, none was being sold and shipped away.

We therefore think that, in stating the account, the master should assume that the lumber used in constructing buildings and roads was part of that which the defendant reported as sawn.

Another conclusion of the vice-chancellor, embodied in the order for an account, and which the defendant insists is unwar-

.ranted, is that requiring him to account for all profits realized by him from the purchase and sale of lumber on his own behalf and sawed at the complainants' mill. The defendant contends, that such a liability is not charged against him in the bill nor supported by the proofs.

The contract between the testator and the defendant related solely to the wood standing upon the land of the former, and did not require that the defendant should devote more than one-half of his time to the undertaking. It appears that, from the commencement of business under this contract, the defendant engaged in sawing lumber at the mill for other persons, and regularly made report to the testator of the charges for such sawing, as though it were within the scope of his agency. After the lapse of about a year, the defendant began to buy lumber with his own money, to have it sawed at the mill, charging himself with the regular price for sawing, and to sell it from the mill, dividing his profits with the foreman. This course of dealing was not entered upon until after the testator's death, and was not known to the complainants until a short time before they discharged the defendant, as the weekly reports did not disclose the names of persons for whom lumber was sawn.

The question first arising is, whether the bill is so framed as to apprise the defendant that he was called upon to account for the profits of this outside business.

The bill intelligibly presents three claims—*first*, that the defendant shall account for his doings as agent, embracing all those transactions which he was authorized or obliged to perform under the contract; *second*, that he shall state an account of all lumber sawed at the mill for other persons than the testator and the complainants, and for whom, and for what price it was sawed; *third*, that certain lumber and material, lying on the premises, and claimed by the defendant as his own, really belonged to the complainants, or had been so mingled by the defendant with the complainants' property as to be undistinguishable from it, and therefore was to be deemed their property. I do not think it possible to ascertain by a perusal of the bill that the complainants made any other specific claim. The testimony subsequently

·produced by the complainants makes it manifest that, before filing their bill, they had information, quite full and trustworthy, ·of this business carried on by the defendant outside of the contract; and certainly if they had designed to insist in their bill that the profits of such business ' belonged to them, upon the ground that it was inconsistent with the defendant's duty as their agent to transact it for his own emolument, they would have presented some particular allegations to that effect. The rules of equity pleading required that the complainants should state the facts upon which their claims rested with such fullness and certainty as would give the defendant clear information of the case he was called upon to answer (*Mutual Life Ins. Co.* v. *Sturges, 6 Stew. Eq. 328*), and this demand on their part for profits is so distinct from an account of transactions within the contract of agency, and is to be supported on grounds so dissimilar, being founded upon a species of tort, that the complainants ought to have presented it in clear and definite form.

I think, therefore, that the order made upon this point was not fairly within the issues raised by the pleadings, and to that extent the order should be reversed.

With these modifications, the order for an account should stand; but nothing in our decree is to be considered as preventing an application to the chancellor for leave to produce further testimony before the master upon the accounting, if that shall seem desirable.

*For affirmance*—None.

*For reversal*—The Chief-Justice, Dixon, Garrison, Magie, Scudder, Van Syckel, Brown, Clement, Cole, ·Smith, Whitaker—11.